CASE NO. 23-10365

_____

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

CHRISTOPHER FRANKEL,

Appellant/Cross-Appellee,

vs.

THE HURRY FAMILY REVOCABLE TRUST, SCOTTSDALE CAPITAL
ADVISORS CORPORATION, and ALPINE SECURITIES CORPORATION,

Appellees/Cross-Appellants.

_____

Appeal of a Final Judgment and an Order from the United States District Court for
the Middle District of Florida, Case No. 8:18-cv-02869-CEH-CPT

_____

**APPELLANT'S REPLY/CROSS-ANSWER BRIEF**

_____

David C. Banker, Esquire
Bryan D. Hull, Esquire
Harold D. Holder, Esquire
Laura B. Labbee, Esquire
Lauren B. Yevich, Esquire
BUSH ROSS, P.A.
P.O. Box 3913
Tampa, Florida 33601-3913
(813) 224-9255

*Counsel for Appellant/Cross-Appellee*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Under Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-2, Christopher Frankel certifies through counsel, to the best of his knowledge, information, and belief, that the following persons and entities may have an interest in the outcome of the case:

1.  Alpine Securities Corporation, Appellee / Cross-Appellant / Plaintiff / Counter-Defendant

2.  Andersen, Jeffrey Carter, Attorney, Bush Ross, P.A., trial counsel for Christopher Frankel

3.  Bajo Cohen Agliano, P.A., trial counsel for all Appellees / Cross-Appellants / Plaintiffs / Counter-Defendants

4.  Banker, David C., Attorney, Bush Ross, P.A., counsel for Appellant / Cross-Appellee / Defendant / Counter-Plaintiff Christopher Frankel

5.  Breslow, Brandon K., Attorney, Kynes, Markman & Felman, P.A., appellate counsel for all Appellees / Cross-Appellants / Plaintiffs / Counter-Defendants

6.  Bush Ross, P.A., counsel for Appellant / Cross-Appellee / Defendant / Counter-Plaintiff Christopher Frankel

7.  Cayman Securities Clearing and Trading Ltd., former Plaintiff

8.  Cohen, Victor Stephen, Attorney, Bajo Cohen Agliano, P.A., trial counsel for all Appellees / Cross-Appellants / Plaintiffs / Counter-Defendants

i

9.     Covington, The Honorable Virginia M., United States District Judge, former judge in the underlying matter

10.     Frankel, Christopher, Appellant / Cross-Appellee / Defendant / Counter-Plaintiff

11.     Fritz, Maranda E., Attorney, Maranda Fritz P.C. counsel for all Appellees / Cross-Appellants / Plaintiffs / Counter-Defendants

12.     Grilli, Peter John, Mediator, Peter J. Grilli Mediation

13.     Hayes, David A., Attorney, Turkel Cuva Barrios, P.A. counsel for all Appellees / Cross-Appellants / Plaintiffs / Counter-Defendants

14.     Holder, III, Harold D., Attorney, Bush Ross P.A., counsel for Appellant / Cross-Appellee / Defendant / Counter-Plaintiff Christopher Frankel

15.     Honeywell, The Honorable Charlene E., United States District Judge, successor judge in the underlying matter

16.     Hull, Bryan D., Attorney, Bush Ross P.A., appellate counsel for Appellant / Cross-Appellee / Defendant / Counter-Plaintiff Christopher Frankel

17.     Hurry, John, Trustee of The Hurry Family Revocable Trust, Appellee / Cross-Appellant / Plaintiffs / Counter-Defendant

18.     Kynes, Markman & Felman, P.A., appellate counsel for all Appellees / Cross-Appellants / Plaintiffs / Counter-Defendants

19.     Markman, Stuart C., Attorney, Kynes, Markman & Felman, P.A., appellate counsel for all Appellees / Cross-Appellants / Plaintiffs / Counter-Defendants

20.     Norse, Kristin Ann, Attorney, Kynes, Markman & Felman, P.A., appellate counsel for all Appellees / Cross-Appellants / Plaintiffs / Counter-Defendants

21.     Scottsdale Capital Advisors Corporation, Appellee / Cross-Appellant / Plaintiff / Counter-Defendant

22.     Securities Settlement Solutions, LLC, entity affiliated with Appellant / Cross-Appellee / Defendant / Counter-Plaintiff Christopher Frankel

23.     The Hurry Family Revocable Trust, Appellee / Cross-Appellant / Plaintiff / Counter-Defendant

24.     Tuite, The Honorable Christopher P., United States Magistrate Judge

25.     Turkel Cuva Barrios, P.A. counsel for all Appellees / Cross-Appellants / Plaintiffs / Counter-Defendants

26.     Turkel, Kenneth G., Attorney, Turkel Cuva Barrios, P.A. counsel for all Appellees / Cross-Appellants / Plaintiffs / Counter-Defendants

27.     Vogt, Shane B., Attorney, Turkel Cuva Barrios, P.A. counsel for all Appellees / Cross-Appellants / Plaintiffs / Counter-Defendants

28.    Yanes, Katherine Earle, Attorney, Kynes, Markman & Felman, P.A. appellate counsel for all Appellees / Cross-Appellants / Plaintiffs / Counter-Defendants

8AZ046509.DOCX

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

TABLE OF CONTENTS ........................................................................ v

TABLE OF CITATIONS ........................................................................ vii

REPLY ARGUMENT ON DIRECT APPEAL ........................................................ 1

I.   The district court's errors in refusing Fife's testimony and allowing
Alpine to seek undisclosed damages entitle Frankel to a new trial ............... 3

A. The district court improperly excluded Fife .............................. 3

1. Fife was not an undisclosed or late-disclosed trial witness ............4

2. The district court misinterpreted and misapplied Rule 26 ..............8

B. The district court abused its discretion when it allowed Alpine to
argue undisclosed damage computations ................................. 11

II. No competent, substantial evidence supported the unjust enrichment
award ........................................................................ 17

RESPONSE ARGUMENT ON CROSS-APPEAL ................................................ 19

The district court acted within its discretion in denying a permanent
injunction ................................................................... 19

A. The district court's findings concerning the trade blotter contain no
clear error .................................................................. 20

B. Alpine failed to satisfy the requirements for a permanent injunction ..... 22

1. The district court did not clearly err in finding that Alpine
failed to show irreparable harm as a result of its unreasonable
delay ......................................................................22

2. The district court did not clearly err in finding that, based on
the verdict, Alpine suffered no harm that was difficult to
quantify as a legal remedy ............................................26

CONCLUSION ................................................................... 30

CERTIFICATE OF COMPLIANCE ........................................................................ 32

CERTIFICATE OF SERVICE ................................................................................ 33

8AZ046509.DOCX

# <u>TABLE OF CITATIONS</u>

**Cases**

*Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564 (1985) ...................... 20, 22

*Carbo Ceramics, Inc. v. Keefe*, 166 F. App'x 714 (5th Cir. 2006) ........................17

*Chemence Med. Prod., Inc. v. Quinn*, 685 F. App'x 701 (11th Cir. 2017) ..............5

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) .............................. 19, 22

*Epic Sys. Corp. v. Tata Consultancy Servs.*, 980 F.3d 1117 (7th Cir. 2020) ..........17

*Ferrero v. Associated Materials Inc.*, 923 F.2d 1441 (11th Cir. 1991)...................22

*Hurry Family Revocable Trust, et al. v. Frankel*, 2023 WL 23805 (M.D. Fla. Jan. 3, 2023 ..................................................................................................................26

*Jones v. Aaron's Inc.*, 748 F. App'x 907 (11th Cir. 2018) .....................................11

*Lawver v. Hillcrest Hospice, Inc.*, 300 F. App'x 768 (11th Cir. 2008)....................6

*Mickalis v. Town of Summerville*, 60 F.3d 823 (4th Cir. 1995)...............................10

*Morris v. BNSF Ry. Co.*, 969 F.3d 753 (7th Cir. 2020)......................................7, 10

*Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co.*, 320 F.3d 1260 (11th Cir. 2003) ..........................................................................................................................28

*Riquelme Valdes v. Leisure Res. Grp., Inc.*, 810 F.2d 1345 (5th Cir. 1987)...........11

*Schmidt v. Mars, Inc.*, 587 F. App'x 12 (3d Cir. 2014)...........................................11

*Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244 (11th Cir. 2016).........................19

**Rules**

Fed. R. Civ. P. 26 .......................................................................................... passim

M.D. Fla. L.R. 3.06 ....................................................................................................5

8AZ046509.DOCX

## REPLY ARGUMENT ON DIRECT APPEAL

Frankel requests reversal and a new trial because: (1) the district court erroneously excluded Frankel's disclosed witness, John Fife, whose proffered testimony refuted the misappropriation theory and damages Alpine[1] sought at trial; (2) Alpine failed to disclose its damages computation, as required by Rule 26, depriving Frankel of the opportunity to defend against the damages Alpine asked the jury to award; and (3) substantial, competent evidence did not support the jury's unjust enrichment award of $932,000.

In February 2019, Frankel disclosed Fife as a "current or former client[] of Plaintiffs with whom [he had] communicated since August 1, 2018." That was within three months of Alpine filing this case, six months before the close of discovery, and two years before trial.

At that time, Alpine was pursuing a claim that Frankel used its secrets to try to buy a broker-dealer. Alpine never amended its complaint to bring a claim related to Frankel's work at his new employer, Vision and never disclosed—until closing argument—how it intended to compute damages involving Frankel's work at Vision.

In the pretrial statement, Alpine's section referenced Frankel "doing $200,000 in business with an Alpine/SCA customer," *i.e.*, the business between Fife's

---

[1] This brief adopts Appellees' convention of using "Alpine" to refer to all Appellees.

1

companies and Vision. As a precaution, Frankel therefore listed Fife as a trial witness *in the same pretrial statement*.

At trial, Alpine began to focus its misappropriation claim on Fife's companies, so Frankel asked to call Fife—who was on his witness list and disclosed at the outset of the case—as the key independent witness in defense of the claim. Fife was never "undisclosed," was never "removed" from Frankel's witness list, was known to Alpine early in the case, and was the subject of considerable deposition testimony.

After allowing Alpine to proceed on an unpled claim involving Frankel's work at Vision, the district court abused its discretion by refusing Frankel's request to call Fife to defend against the claim, and then, by permitting Alpine to seek an undisclosed damages computation derived from amounts Fife's companies paid Vision.

Without ever hearing from Fife, the jury awarded unjust enrichment consisting of amounts that Vision, not Frankel, had received from Fife. There was no competent evidence that Frankel himself was unjustly enriched in this amount. Post hoc possibilities that Alpine never argued or presented to the jury cannot support the award and only highlight the prejudice in Frankel's inability to defend against an unpled claim and undisclosed damages computation.

## I. The district court's errors in refusing Fife's testimony and allowing Alpine to seek undisclosed damages entitle Frankel to a new trial.

The district court erred when it did not allow Frankel to present a critical witness to defend against Alpine's unpled claim concerning Frankel's use of trade secrets to win clients to Vision. Alpine seemingly misunderstands the point: The error was not in permitting Alpine to proceed on an unpled claim, but in preventing Frankel from defending against that claim once it became part of the case.

Alpine nonetheless argues Frankel's work at Vision became "fair game" through the pretrial statement (which vaguely referenced that Frankel, not Vision, "did business with" Alpine customers). AB35; Doc.170 at 3. By the same token, the pretrial statement listed Fife as a witness, without a corresponding objection from Alpine, so his testimony was no less "fair game" at trial. Doc.165-4¶17. What the pretrial statement did not contain, however, was any description of the amount or methodology of computing the unjust enrichment damages Alpine sought. Doc.170 at 3. If the pretrial statement governed trial, as Alpine argues, the district court should have allowed Fife to testify and excluded Alpine's undisclosed damage computation.

### A. The district court improperly excluded Fife.

Two reasons show why the district court abused its discretion in refusing Frankel's request to call Fife. First, Frankel timely identified Fife as a witness. Second, the district court incorrectly interpreted Rule 26 to require a formal disclosure of Fife.

3

**1. Fife was not an undisclosed or late-disclosed trial witness.**

Alpine's search for "context" offers no support for excluding Fife. AB37. *First*, Frankel filed a pretrial statement listing "John Fife" as a trial witness on the date required by the district court. Docs.29; 163; 165-4¶17. Alpine complains this occurred after the close of discovery, but the scheduling order required that sequencing. Doc.29. Alpine listed no objection to Fife on the pretrial statement, filed no motion to strike him as a witness, and made no request for leave to depose Fife, despite moving to reopen discovery to re-depose Frankel a few weeks later.[2]

*Second*, Alpine never made a specific request to depose Fife. The communication Alpine references involved a conferral about presenting the case for trial during the pandemic. Doc.280-1 at 3. As part of a packaged proposal that would have required stipulating to witnesses appearing at trial by Zoom, Alpine made the "suggestion" that "each side allow the other to depose any witnesses who were not listed as witnesses on initial disclosures or otherwise." Doc.280-1 at 3. Fife was "otherwise" listed in Frankel's February 2019 interrogatory response and thus outside the offer. Frankel declined the proposal.

---

[2] The motion claimed Frankel did not supplement his disclosures and interrogatory answers with "customers with whom he communicated while working for Vision." Doc.189 at 3. This did not include Fife and his companies—Frankel disclosed them a year earlier, and Alpine questioned Frankel about them in his first deposition.

*Third*, Frankel never "removed" Fife from his witness list. AB37. Frankel complied with a scheduling order requirement to "state whether [each witness] will likely be called" and to designate "which witnesses will definitely be called," and "which witnesses may be called." Doc.29 at 7, 8. Even the local rules required parties to notate "the likelihood [a] witness will testify." M.D. Fla. L.R. 3.06(b)(5).

Alpine acknowledged these requirements, disclosed its own "witnesses we will definitely call at trial … without prejudice and with reservation of rights as to the 'may call' category, which is the remainder of our listed witnesses," and asked Frankel to "provide the same information." Doc.280-1 at 3. In response, Frankel sent his list of will-call witnesses, which he called his "real witness list." Doc.280-2.

Alpine cannot seriously suggest Frankel's compliance with these provisions in the scheduling order and local rules, as well as Alpine's own agreement, operated as a waiver of the right to present a witness that "may" be called. The scheduling order stated the district court could exclude "unlisted witnesses"—not witnesses in the may-call category, as Alpine's email recognized. Docs.29 at 8; 280-1 at 3. Unlike *Chemence Med. Prod., Inc. v. Quinn*, 685 F. App'x 701, 704 (11th Cir. 2017), which involved multiple, specific representations that a witness would *not* testify, Frankel never made such representations and never withdrew Fife as a witness. Alpine clearly knew listed witnesses "may" be called.

5

*Fourth,* Frankel asked to call Fife as a witness *before* Alpine even rested its case. The request did come after a lunch break on the fourth day of trial, but Alpine did not rest until approximately 3:22 p.m., the same day Alpine contends "testimony was set to conclude." Doc.318 at 138, 214–16. Alpine asserts Frankel waited too long, but considerable additional testimony about Fife and his companies, including Chicago Ventures, came out on the fourth day of trial. Doc.318 at 17–19, 41–42, 56–60, 159–60, 241–43. Alpine has no authority that would require a party to determine which of its listed witnesses to present *before* hearing all of its opponent's evidence.

Alpine points to three factors considered in reviewing the exclusion of a witness "not listed on the pretrial order" or stricken for failure "to comply with Rule 26": (1) the importance of the testimony, (2) the reason for the failure to disclose, and (3) prejudice to the opposing party. *Lawver v. Hillcrest Hospice, Inc.*, 300 F. App'x 768, 770 (11th Cir. 2008), cited in AB38.

Neither threshold reason for exclusion applied: Fife *was* listed on the pretrial statement and *was* "otherwise" disclosed "during the discovery process or in writing" under Rule 26(e)(1)(A). That should have ended the district court's analysis, or at the very least, tipped the second factor decidedly in Frankel's favor.

On the other factors, the importance of Fife's testimony cannot be overstated. Alpine asked the jury to award trade secret misappropriation damages based on Fife's payments to Vision, and the jury awarded those amounts as unjust enrichment.

Docs.302¶17; 319 at 56–60; 343-2. Fife would have testified that Frankel did not use or disclose Alpine's trade secret information to solicit his business, that Fife sought Frankel's help to open Vision accounts, that Fife's companies still maintained accounts at Alpine, and that Fife's companies sought out Vision because Alpine lacked the capital to support all of the trades they wanted to execute. Doc.293.

Alpine cannot downplay the significance of this testimony by pointing to an email "in which Frankel recruited [Fife's companies] using trade secret information." AB38. The only possible mention of a trade secret in the email was a reference to Alpine's pricing, Doc.369-24, and the district court determined Alpine's pricing information was *not* a trade secret. Doc.408 at 30. This email is not evidence of misappropriation and certainly does not make the exclusion of Fife harmless.

Nor can Alpine claim prejudice. Alpine knew about Fife since early in the lawsuit, and Fife was listed as a trial witness a year and a half before trial. By contrast, in *Morris v. BNSF Ry. Co.*, 969 F.3d 753, 766 (7th Cir. 2020), the reference to three excluded witnesses was buried in a document production and had to be "unearthed like a needle in a haystack." A fourth excluded witness was disclosed as having knowledge on a completely different topic than sought to be offered at trial. *Id*. at 765–66. Frankel, on the other hand, answered that Fife was a "current or former client[] of Plaintiffs with whom [he had] communicated," gave deposition testimony

7

about Fife and their communications, and proffered Fife's testimony on the same topics. Docs.54-1¶2; 116 at 24–31, 113; 328-1 at 42–55; 293.

The district court abused its discretion in excluding Fife's testimony. "[N]ot trying to surprise anybody," Frankel included Fife on his may-call witness list and ultimately found the need to call Fife to "rebut [a] damage analysis," that Alpine "certainly never disclosed" until trial. Doc.318 at 243.

### 2. The district court misinterpreted and misapplied Rule 26.

Although Alpine disagrees, AB40, the record plainly shows the district court excluded Fife because his name did not appear on a Rule 26 disclosure. And in doing so, the district court erroneously interpreted the rules.

The district court initially believed Alpine objected to Fife because Frankel did not put him on the "short list" of witnesses. Doc.318 at 241. The district court asked, "Did I misunderstand," and Alpine responded, "Yeah, I think, Judge. He was never disclosed in discovery." Doc.318 at 241. Alpine did not argue that only witnesses on the "short list" could testify, or that the filing of witness lists came after discovery closed, although Alpine did point out that Frankel declined its offer "to let everybody depose everybody" after the discovery deadline. Doc.318 at 241–42.

The district court, however, focused on Rule 26:

THE COURT: Let me ask it this way. Was he disclosed in the initial disclosures or supplemental disclosures, Mr. Turkel?

MR. TURKEL: No, they --

8

THE COURT: He was not?

Doc.318 at 242. Once Frankel conceded he "didn't supplement any disclosures, but I certainly put him on the witness list," the district court abruptly ruled, "I don't think he should be allowed to testify." Doc.318 at 243.

This ruling—clearly grounded in Rule 26—failed to consider whether the pleadings even required Frankel to disclose Fife. Recall that Alpine's complaints framed a claim for using its trade secrets to try to purchase a broker dealer. Alpine's complaints did not allege any claim about Frankel's work at Vision, or any claim about payments Fife made to Vision.

Alpine insists Frankel should have known its claim would morph once Fife's companies started doing business with Vision. But Rule 26 is based on the claims pled. While the committee notes indicate the issues may be "informally refined and clarified" in a Rule 26(f) conference, Alpine never suggests having raised the unpled Vision or Fife issues at such a meeting. Even references to "common sense" and avoiding "gamesmanship" cannot require the disclosure of individuals who would only support a defense to an unpled claim which has not yet entered the case. While Alpine argues these unpled issues became "fair game" through the pretrial statement, that document contained a clear disclosure of Fife as a witness.

The district court also failed to consider whether Fife was otherwise made known "during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Frankel's February 2019 interrogatory answer accomplished both. Doc.54-1¶2. Then, Frankel gave extensive testimony during discovery about his relationship and communications with Fife. Doc.116 at 24–31, 113. Even Alpine's corporate representative confirmed his belief—before discovery closed—that Frankel had inappropriately contacted Fife. Doc.115 at 162–63, 165, 167–69.

Alpine's sole argument is that Frankel did not give a sufficiently robust interrogatory answer to prepare for Fife's trial testimony. But the response identified Fife as a "current or former client[] of Plaintiffs with whom [Frankel] communicated since August 1, 2018," and Fife's proffered testimony involved the substance of those communications. Docs.54-1¶2; 293¶¶12–14. Frankel's deposition testimony that Fife's companies attempted to open Vision accounts before Frankel worked there and that Fife "initiated contact" with Frankel after he left Alpine also matched Fife's proffered testimony. Docs.116 at 25–26, 30, 113; 293¶¶10–14. A Rule 26 disclosure would not have said more. Alpine's failure to depose Fife did not stem from the absence of a supplemental disclosure but Alpine's decision not to subpoena one of its customers during discovery.

Unlike cases Alpine cites, Fife was not "a needle in a haystack" or a "surprise" but the subject of discovery pursued *by Alpine*. *See Morris*, 969 F.3d at 766; *Mickalis v. Town of Summerville*, 60 F.3d 823 (4th Cir. 1995) (unpublished table decision). Alpine certainly cannot claim surprise from Frankel's request to present Fife's

10

testimony after Alpine focused its own trial presentation and damages argument on Fife's companies.

Of course, Alpine never moved to strike Fife from the witness list. Nor did Alpine ever raise the need for a more complete witness disclosure, like the party in *Jones v. Aaron's Inc.*, 748 F. App'x 907, 914 (11th Cir. 2018). And unlike *Schmidt v. Mars, Inc*., 587 F. App'x 12, 16 (3d Cir. 2014), where the excluded witnesses' testimony did not raise the possibility of changing the jury's verdict, Fife's testimony would have refuted the misappropriation claim and the sole underpinning of the unjust enrichment award. As Alpine's counsel told the jury in closing, "those [Fife's companies] are the only ones we've got financial data on." Doc.319 at 56, 58–60.

The district court erroneously interpreted Rule 26 as requiring a supplemental disclosure of Fife. The rule provided no basis for the exclusion of his testimony.

### B. The district court abused its discretion when it allowed Alpine to argue undisclosed damage computations.

The district court should not have allowed Alpine to present and argue undisclosed damage computations. *See Riquelme Valdes v. Leisure Res. Grp., Inc.*, 810 F.2d 1345, 1357–58 (5th Cir. 1987) (finding "severe[] prejudice" where district court "[i]nexplicably" allowed questioning regarding a damages theory that was not pled and not disclosed during discovery or in the pretrial statement). Alpine's response relies on the faulty premise that the district court excused Alpine's failure to disclose its damage computations as "substantially justified" by assertions of

11

Frankel wrongfully withholding the underlying information. AB46. That is not supported by the record. Alpine may not foist its failure to discover, disclose, and prove proper damages on Frankel—especially when no discovery violations were ever found by the district court.

Instead, the district court made two significant rulings *against Alpine*, limiting its ability to present damages evidence. First, because Alpine never requested Frankel's compensation during discovery, Alpine could only elicit compensation testimony upon first establishing that Frankel received commissions or bonuses for business "from former clients of Plaintiffs who switched to Vision." Doc.290. Second, because Alpine never disclosed a damage computation, Alpine could only highlight trial testimony and could not present "a specific dollar amount" or "do[] the math for the jury." Docs.290; 318 at 6.

Over Frankel's objection, the district court did not enforce either ruling at trial. The only testimony Alpine points to for laying the required predicate is that "Frankel identified at least 13 customers on Alpine's top-50 list that opened accounts at Vision after he began to work there." AB27.[3] This testimony did not show that customers left Alpine *in favor of Vision* because of Frankel, or even that Alpine lost

---

[3] While Frankel testified that several customers on Alpine's top 50 list opened accounts with Vision after he began working there, Doc.318 at 19–21, including Fife's entities, Doc.316 at 215–16, he named a dozen of these customers that had reached out to Vision to open accounts, Doc.318 at 58–71. And one, that he also named, already had a Vision account before he started. Doc.318 at 70.

customers at all. Alpine did not attempt to couple Frankel's testimony with evidence that Alpine lost accounts or revenues, a critical component for satisfying the required predicate. Fife's testimony, of course, would have been particularly salient to show Alpine had not made the threshold showing to obtain testimony about Frankel's compensation. Doc.293.

Then, despite earlier ruling that Alpine could not present a damages computation to the jury, the district court allowed Alpine to do just that over Frankel's objection. The district court permitted Alpine to use, and argue from, "a demonstrative exhibit so the jury can follow the math." Doc.319 at 27–29.

Contrary to Alpine's argument, the district court *did not* rule that Frankel had engaged in any alleged discovery misconduct justifying the admission of the previously-excluded evidence and computations. To start, the district court never determined that Frankel violated any discovery obligations by sending an e-mail to Vision, Doc.369-25, in response to Alpine's vastly overbroad subpoena to his employer for "All Documents and Communications between You and Christopher Frankel since June 1, 2015." Doc.76-1. The magistrate judge ordered Alpine to confer with Frankel and narrow the subpoena. Doc.100. And as Alpine admits, AB15, Alpine agreed to limit the scope. Docs.87; 101. While Frankel gave Vision his view of the initial subpoena's breadth, it was Vision that had the legal obligation to respond, and the district court never found Frankel obstructed discovery. Alpine

13

offers nothing to connect this email with its failure to comply with Rule 26's damage disclosure requirements—before or after receiving Vision's production.

Alpine points to emails that Frankel had not produced, which Alpine later received in response to third-party subpoenas. Yet, Alpine knew, and never objected to, the electronic search parameters Frankel used to gather and produce documents. Doc.35-3 at 2. And again, Alpine does not connect these emails with its failure to disclose a damages computation, before or after their production.

Alpine complains that Frankel did not produce an unredacted copy of his agreement with Vision. But Alpine specifically disavowed any need for Frankel's compensation, agreed Frankel could redact information concerning his compensation, and never protested the redactions. Alpine's request for production sought documents showing Frankel's sources of income *with the monetary amounts redacted.* Doc.369-25¶17. No "court order" required Frankel to disclose his compensation and "produce unredacted copies of contracts, including all schedules." AB44. Alpine told the district court, "Judge, let me be clear. I don't care about his compensation. What I care about is whether he profited off of clients that would be subject to a nondisclosure, nonsolicitation agreement, trade secrets violation. That's it." Doc.203 at 70–71. The district court's actual ruling, therefore, was:

> If there is some kind of redaction that everybody is comfortable with, I'm comfortable with it, too. That's my ruling on that.

Doc.203 at 71.

Consistent with this ruling, Frankel produced his contract with Vision and "didn't unredact any of the information about his compensation." Doc.232 at 44. Alpine did not protest Frankel's production of the redacted contract, did not move for an order compelling the unredacted information, and did not claim the lack of that information somehow prevented disclosure of the formula for computing the damages it intended to seek from the jury.

Frankel did not "lie" about his compensation. Frankel accurately confirmed he did *not* earn any bonus or commission tied directly to bringing specific customers to Vision. Docs.232 at 44–45; 316 at 13, 27–28. Alpine offered no evidence of Frankel receiving a commission or bonus for originating any business. Nor did Vision pay Frankel any other compensation that "directly tied" to specific customers.

Alpine has not pointed to a single instance where the district court found Frankel had violated a discovery order. But more significantly, none of the alleged discovery issues served as the district court's basis for changing its earlier ruling and allowing Alpine to present and argue an undisclosed damage computation.

Alpine could have disclosed the computation of its actual damages and unjust enrichment, or at least the formulas it used, long before trial. At trial, Alpine computed its actual damages (which the jury erroneously awarded as unjust enrichment) using Frankel's estimate that Fife's companies paid Vision $100,000 in monthly commissions, reduced by Vision's 40–50% margin, and multiplied by the

15

days through trial. Alpine had the meat of this computation from Frankel's deposition, Doc.116 at 25–31, 113, which he confirmed at trial, Doc.316 at 215–17—although Alpine cannot (and does not) suggest it ever asked for Vision's margin numbers during discovery. Alpine computed Frankel's unjust enrichment (in a formula the jury did not award) using the compensation Vision paid Frankel from the Corporate Services Group's profits in 2019, multiplied by the days through trial. Yet, Alpine disclaimed Frankel's compensation during discovery.

Neither computation was an appropriate measure of damages. Alpine's actual damages consisted of profits on commissions that Alpine would have received from Fife's companies if they had stopped doing business with Alpine—information in Alpine's own financial records. Unjust enrichment consisted of the portion of Frankel's compensation attributable to commissions which Fife's companies paid Vision, not his entire compensation from the Group's profitability.

If Alpine had timely disclosed these computations, Frankel would have had an opportunity to discover and present evidence to challenge them, including evidence on the proper measures of damage. The prejudice to Frankel was certainly borne out. The jury requested to see the damages computation demonstrative during its deliberations, Doc.319 at 139, and adopted one of those amounts as its unjust enrichment verdict, Doc.302¶17. Alpine's failure to comply with Rule 26 meant

there was no way for Frankel to formulate a defense to a last-minute damages computation Alpine haphazardly formulated at the very end of trial.

## II. No competent, substantial evidence supported the unjust enrichment award.

The verdict form asked the jury to determine "the total amount of money, if any, by which Mr. Frankel was unjustly enriched as a legal result of any misappropriation of trade secrets." Doc.302¶17. The evidence at trial did not establish—and the jury award did not represent—an amount Frankel received *as a legal result* of any misappropriation. *See Carbo Ceramics, Inc. v. Keefe*, 166 F. App'x 714, 724 (5th Cir. 2006) ("A plaintiff must introduce evidence by which the jury can value the rights the defendant has obtained.") (cleaned up).

While the standard for misappropriation damages is flexible, no allowable measure of unjust enrichment looks to the plaintiff's claimed actual damages. *Epic Sys. Corp. v. Tata Consultancy Servs.*, 980 F.3d 1117, 1130 (7th Cir. 2020) ("The important considerations are that a judge or jury calculates the benefit to the defendant—not the loss to the plaintiff—and that this calculation is done with reasonable certainty."). Alpine cites no authority that allowed the jury to award an actual damages computation—*i.e.*, the profit on commissions that Alpine believes should have been paid to Alpine—as unjust enrichment.

When asking the jury to measure Frankel's unjust enrichment, that is, "how did he better himself by what he took," Alpine requested the full "$264,000 that he

17

made on the profitability pool in 2019" taken forward for three years for a total of $792,000. Doc.319 at 60. This, however, was not a proper computation of unjust enrichment *as a legal result* of any misappropriation, because Alpine put on no evidence that the entirety of the Group's profits came from Fife's companies (or any other Alpine customers). In any event, the jury rejected this computation and awarded a number Alpine had not even claimed as Frankel's unjust enrichment.

Alpine cannot minimize the lack of evidence by claiming Frankel "engaged in blatant discovery violations to thwart Alpine's attempts to assess damages." AB53. This narrative finds no support, as the district court never found Frankel in violation of any discovery order, and Alpine disavowed Frankel's compensation.

Despite its efforts to craft an evidentiary basis for the $932,000 unjust enrichment award, none of Alpine's arguments were ever presented to the jury. For instance, the record is devoid of evidence valuing Fife's "book of business." AB51–52. Similarly absent is any jury argument supporting Alpine's post hoc computations that Alpine never disclosed under Rule 26 and that Frankel never had the opportunity to refute with evidence or his own argument.

As it stands, Alpine failed to introduce evidence by which the jury could value the benefit to Frankel from any misappropriation of a trade secret. Alpine cannot maneuver around the jury conflating two distinct forms of damages and improperly awarding Alpine's claimed actual damage as unjust enrichment.

## RESPONSE ARGUMENT ON CROSS-APPEAL

**The district court acted within its discretion in denying a permanent injunction.**

District courts have "equitable discretion" to grant or deny a permanent injunction, and the ruling will only be reversed for an abuse of discretion. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In the injunction context, an abuse may occur, for example, if a district court "follows improper procedures," "applies the incorrect legal standard," or "applies the law in an unreasonable or incorrect manner." *Wreal, LLC v. Amazon.com, Inc*., 840 F.3d 1244, 1247 (11th Cir. 2016). But Alpine argues none of these.

Instead, Alpine focuses solely on another ground: "factual findings [that] are clearly erroneous." *Id*. According to Alpine, three findings amounted to clear error:

- *first*, that Alpine gave Vision the same type of information contained on the trade blotter as part of its ex-clearing relationship, which meant the blotter lost its trade secret and confidential status,

- *second*, that Alpine's failure to seek an injunction to protect its trade secret or confidential information at any point before the final judgment undermined its claim of irreparable harm, and

- *third*, that the jury found Alpine had no difficult-to-quantify injury when it refused to award nominal damages, which meant Alpine lacked irreparable harm.

A factual finding is only "'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*

*City, N.C.*, 470 U.S. 564, 573 (1985). If "the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 573–74. Thus, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574.

Held to this standard, Alpine has not demonstrated clear error in the district court's findings, and thus, has not shown an abuse of discretion requiring reversal.

## A. The district court's findings concerning the trade blotter contain no clear error.

As the district court found, the blotter consisted of trading activity information for a period of two days: "the quantity of shares, the price and the symbol, whether it was bought, whether it's sold, … trade date, and in some cases settlement date." Doc.408 at 26 (quoting Doc.318 at 155). The blotter was "anonymous," however, in that it lacked "information as to the accounts associated with the trades or the broker-dealer doing the trades." Doc.408 at 27 (citing Doc.316 at 45).

The district court found Alpine did not "employ[] sufficient reasonable means to maintain the secrecy of its trading activity such that the trade blotter constitutes a trade secret." Doc.408 at 27–28. This was because Alpine has been sharing the same type of trading activity information with Vision since Alpine and Vision began ex-clearing trades together in 2020. Doc.408 at 28; *see also* Docs.316 at 49–50; 317 at

179–82. By ex-clearing, Alpine "exchange[s] far more information" than what appeared on the blotter—"including 'detailed trade information about the customer, the price, the security.'" Doc.408 at 28 (quoting Doc.316 at 49–50); *see also* Doc.317 at 179–82. In other words, the blotter "doesn't give even the information the competitors share with each other in executing trades." Doc.316 at 50.

Alpine shares this trading information with Vision—knowing Frankel is working there—without "inform[ing] Vision that their trades are a trade secret or that their information was disclosed with restrictions on its disclosure or use by Vision." Doc.408 at 28. And there is no "confidentiality agreement between Vision and Alpine" despite "ex-clearing trades together for the past year." Doc.318 at 86.

Alpine now characterizes the trading information on the blotter as "aggregated" and the information shared through ex-clearing as "transaction specific." Alpine suggests the district court failed to appreciate the difference, yet Alpine never made that distinction to the district court and especially not to the successor judge who inherited the case after trial. Docs.325; 340; 386; 396; 428. And that was even after Frankel repeatedly argued that the information Alpine shared through ex-clearing meant the trading activity on the blotter lost any confidentiality or trade secret protection. Docs.330; 387. No one testified the blotter showed *greater* information than shared through ex-clearing—all record evidence was that the blotter contained *less* information. Docs.316 at 49–50; 317 at 180–82.

The finding that Alpine did not take "sufficient reasonable means to maintain the secrecy of its trading activity such that the trade blotter constitutes a trade secret," Doc.408 at 28, was certainly a "permissible" and "plausible" view of the evidence. *Bessemer*, 470 U.S. at 573–74.

## B. Alpine failed to satisfy the requirements for a permanent injunction.

Alpine does not claim legal error in the denial of its permanent injunction motion and, in fact, acknowledges the district court applied the correct legal standard, namely, the four-part test from *eBay Inc.* Rather, Alpine insists the district court made "clearly erroneous" findings on the two factors decided against it—irreparable harm and inadequate remedies at law. AB58. Both findings reflect "permissible" and "plausible" views of the evidence. *Bessemer*, 470 U.S. at 573–74.

### 1. The district court did not clearly err in finding that Alpine failed to show irreparable harm as a result of its unreasonable delay.

Alpine seemingly claims irreparable harm from "the loss of customers and goodwill." AB58 (citing *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991)). Yet, Alpine introduced no evidence of losing customers or goodwill at all, and the jury made no finding on the issue. Alpine represented in the pretrial statement that Hurry would testify to "significant drops in revenue correlated with the time Frankel breached the agreement," Doc.170 at 3, but Hurry gave no such testimony. The verdict that Alpine suffered $0 in actual damages as a result of any misappropriation comports with this evidentiary hole. Doc.302¶16.

22

Alpine looks to the parties' contract for an agreement that a breach would cause irreparable harm. The contract, however, simply states a breach "may" (not "will") cause irreparable harm the amount of which "may" (not "will") be difficult to ascertain, and thus points to a "right to apply to a court of competent jurisdiction for an order enjoining any such further misappropriation" (not an entitlement to obtain such injunctive relief). Doc.368-2 at 3,¶7(f)("Injunctive Relief").

But the district court's lack-of-irreparable harm finding did not turn on these points. Instead, the district court focused on "the absence of any 'speedy and urgent action on [Alpine's] part.'" Doc.408 at 44. This included Alpine's failure to "seek to temporarily or preliminarily restrain Defendant's use of their information" at any point in time. Doc.408 at 43. And it included Alpine's "continued failure to move to seal the trial exhibits" on the public docket. Doc.408 at 44.

Alpine does not challenge the district court's reasoning—that an unreasonable delay in pursuing an injunction or seeking to seal publicly-filed documents will undermine a claim of irreparable harm for a permanent injunction. Alpine challenges only the finding of undue delay, itself.

In Alpine's view, the district court should have considered "whether the 'defendant is responsible for the delay.'" AB61. And Alpine believes Frankel somehow prevented it from pursuing an injunction early in the case by impeding its ability to "learn[] any specifics." AB59. Alpine thus criticizes the district court's

23

finding as "premised on a misunderstanding that Alpine knew *from the outset* what materials Frankel took and what he was doing with them" and an incorrect "belief that Alpine knew of Frankel's conduct when it did not seek a preliminary injunction *at the outset* of the case." AB59, 62 (italics added).

That was not the basis of the district court's finding. The district court outlined multiple dates throughout the life of the case—not just at its November 2018 inception—each time pointing out what Alpine knew, yet still failed to act. Doc.408 at 42–43. And the record thoroughly supported an undue delay at every turn:

- Alpine received Frankel's document production, which included the customer list, with his February 1, 2019 initial disclosures, Doc.408 at 43 (citing Doc.35-3 at 3);
- Alpine received document productions from Ziv and Koonce in May and July 2019 showing that Frankel had the blotter, AB60 (citing Doc.87 at 3 and Doc.149 at 5);
- Alpine subpoenaed Vision on June 5, 2019, demonstrating it knew Frankel was working with their competition at that time, Doc.408 at 43 (citing Doc.76-1 at 2);
- Alpine questioned Frankel about the anonymous blotter in his August 7, 2019 deposition, before the discovery cutoff, confirming the blotter was from Alpine, AB60 (citing Doc.107 at 3);
- Alpine's corporate representative, John Hurry, testified that by August 2019, he believed Frankel was soliciting customers on the top 50 client list, and he had seen the trade blotters going to Koonce Securities and the Ziv investment firm. Doc.408 at 43 (citing Doc.318 at 183–85).

Other evidence placed Alpine's knowledge of the 'specifics' even before it filed suit. All along, Alpine knew "what materials Frankel took," AB59, because Frankel forwarded those documents from his Alpine email account, leaving a record

24

in "Alpine's e-mail surveillance system." Docs.316 at 135–36; 317 at 33; 368; 369. John Hurry contacted counsel to send Frankel a demand letter after speaking to James Kelly in October or November of 2018. Doc.318 at 171–72. And if Kelly's trial testimony is to be believed, Alpine knew at that time that Frankel had the blotter and had discussed it with Kelly. Doc.318 at 104–08. According to Hurry's own testimony, "[t]he lawsuit started because [Alpine] had evidence that [Frankel] was using confidential trade secret information to unfairly compete." Doc.408 at 43 (citing Doc.318 at 185).

Despite Alpine believing it had a sufficient legal and factual basis to bring this suit, and despite receiving discovery of the information it claimed to lack at the start, Alpine never sought a preliminary injunction to protect its claimed confidential or trade secret materials.[4] Alpine then waited to move for a permanent injunction until the last possible date, June 4, 2021—thirty days after the final judgment.

Alpine offers no explanation for waiting nearly two years to pursue injunctive relief once it unquestionably had the 'specifics.' And *that* was the basis of the district court's finding. Doc.408 at 43–44.

---

[4] At trial, Frankel sought to introduce this fact as evidence which refuted Alpine's claim that any of its information was trade secret or confidential, but the district court sustained an objection to its admission. In this hotly contested liability case, the jury could well have rejected Alpine's trade secret claims if the district court had allowed the admissible evidence that Alpine could have tried to protect its information by moving for a preliminary injunction but did not do so.

Nor does Alpine offer any explanation for its "continued failure" to move to seal trial exhibits containing its alleged trade secret and confidential information. Doc.408 at 44. Even now, the record contains no motion to seal the trial exhibits. IB Appx. Vol. I, Doc.48-1, Tab A. And that's after the district court's order, published at *Hurry Family Revocable Trust, et al. v. Frankel*, 2023 WL 23805 (M.D. Fla. Jan. 3, 2023), identified Alpine, gave the case number, offered a detailed description of the claimed trade secret and confidential materials, and told exactly where they could be found. Doc.408 at 3–4, 25–35.

Further supporting the district court's lack-of-irreparable harm finding, the jury verdict determined Frankel's breach of contract and misappropriation caused no harm at all, not even nominal damage, to Alpine, a point discussed in the next section. Docs.302; 408 at 44 n.14.

On this record, Alpine has not demonstrated clear error in the district court's finding that it failed to show irreparable harm.

> **2. The district court did not clearly err in finding that, based on the verdict, Alpine suffered no harm that was difficult to quantify as a legal remedy.**

The district court found the jury had rejected Alpine's claim of suffering damages that could not be calculated. Doc.408 at 45–46. This was correct. And it meant Alpine could not show the absence of an adequate legal remedy.

26

A jury instruction specifically addressed what the jury was to do if it found

Alpine could not establish the amount of its damages with reasonable certainty:

> B. Nominal Damages
>
> If you find that the Hurry Trust, Scottsdale, and/or Alpine have established they have been damaged, but that they have not proven the amount of damages with reasonable certainty, nominal damages may be awarded. Nominal damages do not compensate for loss or harm, but are instead awarded to vindicate rights, the infringement of which has not caused provable injury.

Doc.301 at 15. And when the verdict form asked the threshold question, "Did any

breach by Mr. Frankel [of either contract] cause damage to [Alpine]," in every

instance, the jury answered, "NO." Doc.302¶¶4, 8, 12.

The verdict form then asked for the "total amount of money that will fairly

compensate" Alpine for the damage, reminding the jury, "You may award nominal

damages if Plaintiff has not proven the amount of damages with reasonable

certainty." Doc.302¶¶ 5, 9, 13. Having found that Frankel did not cause *any* damage

to Alpine, the jury declined to award even nominal damages. Doc.302¶¶ 5, 9, 13.

On the misappropriation claim, the jury rejected any claim of Alpine suffering

damages incapable of calculation and, again, declined to award nominal damages by

finding Alpine had "$0" in actual damage. Doc.302¶16. On the unjust enrichment

claim, the jury yet again did not find damages incapable of calculation—it quantified

that amount (albeit incorrectly) at $932,000.

27

The district court found "the jury had the opportunity to agree with Plaintiffs' argument that they had been damaged but that those damages were incapable of calculation, yet it declined to do so." Doc.408 at 46. And this finding of fact "bound" the district court. Doc.408 at 46. The district court again emphasized, "the jury's verdict rejecting even unquantifiable damages is a finding of fact that contradicts Plaintiffs' argument that remedies at law are inadequate because their damages are incapable of calculation." Doc.408 at 46 n.15.

Alpine's sole argument is that the jury verdict did not actually determine that it had suffered no harm from any misappropriation or breach. Alpine seemingly quarrels with the award of $0 in actual damage, suggesting it had put on evidence of harm. Yet, Alpine does not even attempt to show the verdict should be overturned because "no rational trier of fact could have reached the same conclusion based upon the evidence in the record." *Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co.*, 320 F.3d 1260, 1267 (11th Cir. 2003). The real focus of Alpine's argument, however, is that the jury must have found any actual damages wholly "duplicative" of its request for unjust enrichment, and the verdict form advised against "double counting." AB64 (citing Doc.301 at 20).

Of course, Alpine had asked the jury to award different, non-duplicative calculations under each category. And nominal damages, as the jury instructions showed, are anything but duplicative: "Nominal damages do not compensate for loss

28

or harm, but are instead awarded to vindicate rights, the infringement of which has not caused provable injury." Doc.301 at 15.

Alpine suggests the permissive language in the instruction (which it never objected to) did not require an award of nominal damages. But that is not proof the jury found nominal damages proper and just declined to award them. To the contrary, the jury specifically answered "NO" to the threshold question of whether Alpine suffered any damages—quantifiable or not—from the breach of a contract that, in Alpine's words, required that Frankel not "disclose or use" confidential information "for his own purposes or to benefit anyone other than Alpine." Doc.302¶¶ 4, 8, 12; AB5 (citing Doc.368-2 at 1). That finding is entirely consistent with the parallel finding that Alpine suffered no actual damages from the misappropriation of any trade secrets. Doc.302¶16.

Alpine insists the jury verdict offers confirmation that it was unable to prove actual damages. Yet, Alpine could easily have proven damage, if damage had occurred. For example, Alpine could have offered evidence that Fife's companies closed their accounts after July 2018, that Fife's companies discontinued or even reduced their trading activity, or that the revenue Alpine earned from Fife's companies dropped. All of this evidence (if it existed) was clearly in Alpine's possession, would not have required expert testimony, and did not require discovery from third parties. But Alpine chose not to offer it. Alpine even could have offered

29

evidence to try to show it could not prove the amount of its damage or sought a special interrogatory that it had suffered harm from misappropriation.

In short, Alpine has not demonstrated clear error in the district court's finding that it failed to establish injury from "damages that are incapable of calculation, such that damages at law are inadequate." Doc.408 at 46.

## CONCLUSION

On the direct appeal, the district court abused its discretion by erroneously excluding Frankel's disclosed witness, John Fife, and allowing Alpine to present and argue a damages computation Alpine never disclosed. The district court further erred by refusing to set aside the jury's unjust enrichment award which lacked a substantial, competent evidentiary basis. The final judgment should be reversed and the case remanded with instructions to enter judgment for Frankel on the misappropriation claims, to grant a remittitur on the misappropriation judgment, or to grant a new trial on the misappropriation claims.

On the cross appeal, the district court acted well within its discretion in denying permanent injunctive relief. The order denying Alpine's motion for a permanent injunction should be affirmed.

Respectfully submitted,

BUSH ROSS, P.A.

Dated: November 13, 2023          By: /s/ Bryan D. Hull
                                  Bryan D. Hull (Fla. Bar No. 20969)
                                  bhull@bushross.com
                                  David C. Banker (Fla. Bar No. 352977)
                                  dbanker@bushross.com
                                  Harold D. Holder (Fla. Bar No. 118733)
                                  hholder@bushross.com
                                  Laura B. Labbee (Fla. Bar No. 113577)
                                  llabbee@bushross.com
                                  Lauren B. Yevich (Fla. Bar No. 106608)
                                  lyevich@bushross.com
                                  Post Office Box 3913
                                  Tampa, Florida 33601-3913
                                  (813) 224-9255 (telephone)
                                  (813) 223-9620 (fax)
                                  *Counsel for Appellant/Cross-Appellee*

31

## <u>CERTIFICATE OF COMPLIANCE</u>

Appellant's brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(A) because, excluding the parts of the brief exempted by Fed. R. App. 32(f), this document contains 7,298 words.

/s/ Bryan D. Hull
Attorney

32

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 13, 2023, I electronically filed a true and correct copy of the foregoing with the Clerk of the United States Court of Appeals for Eleventh Circuit using the CM/ECF system, and provided four (4) true and correct copies to Federal Express, postage prepaid, for delivery to:

> Clerk of Court
> U.S. Court of Appeals for the 11th Circuit
> 56 Forsyth Street N.W.
> Atlanta, Georgia 30303

I FURTHER CERTIFY that on November 13, 2023, I caused a true and correct copy of the foregoing to be served via electronic mail upon counsel for Appellees:

Brandon Kyle Breslow
Kynes Markman & Felman, PA
P.O. Box 3396
Tampa, Florida 33601
bbreslow@kmf-law.com

Victor Stephen Cohen
Bajo Cohen Agliano
606 East Madison Street, Suite 1900
Tampa, Florida 33602
scohen@bcalaw.com

David Hayes
Turkel Cuva Barrios
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
dhayes@tcb-law.com

Stuart C. Markman

8AZ046509.DOCX

Kynes Markman & Felman, PA
P.O. Box 3396
Tampa, Florida 33601
smarkman@kmf-law.com

Kristin Ann Norse
Kynes Markman & Felman, PA
P.O. Box 3396
Tampa, Florida 33601
knorse@kmf-law.com

Kenneth G. Turkel
Turkel Cuva Barrios
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
kturkel@tcb-law.com

Shane B. Vogt
Turkel Cuva Barrios
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
svogt@tcb-law.com

Katherine Earle Yanes
Kynes Markman & Felman, PA
P.O. Box 3396
Tampa, Florida 33601
kyanes@kmf-law.com

/s/ Bryan D. Hull
Attorney

8AZ046509.DOCX